RILEY J. JOHNSON, plaintiff in error, vs. BLACK & COBB, defendants in error.

1. A charge wholly unwarranted by the evidence, is erroneous.
2. A verdict, that is against law and evidence, will be set aside.

Assumpsit, in Floyd Superior Court. Tried before Judge HAMMOND, at the July Term, 1860.

On the 14th of June, 1855, Messrs. Black & Cobb sold to Riley J. Johnson fifty-three bales of cotton, being a crop lot of cotton, and designated as the Walker lot, at the price of ten and a half cents per pound, and at the time of the trade, Johnson paid in part for the cotton $1,000 00. According to the terms of the contract, the cotton was to be delivered in the city of Rome, within a reasonable time. At the time of the trade, the cotton was sixty-five or seventy miles distant

from Rome, under a shelter, on the banks of a creek a few miles from the Coosa river. On the 14th of July, 1855, twenty-seven bales of the cotton were delivered, and Johnson sent them to a cotton factor in Charleston, South Carolina, by whom they were sold on the 18th of August, 1855, at eight and a quarter cents per pound. The total weight of the twenty-seven bales was twelve thousand four hundred and forty-six pounds, and the aggregate price received for them was $1,026 79. On the 26th of July, 1855, twenty-six bales of the cotton were received in Rome, and tendered to Johnson, who refused to receive them, saying at the time, that he should have nothing more to do with it. Afterwards, Black & Cobb sent the twenty-six bales of cotton to a factor in Augusta, Georgia, by whom the same were sold, on the 7th of November, 1855, at six and a half cents per pound, the twenty-six bales weighing twelve thousand one hundred and ninety-nine pounds, and were received by the factor only a few days previous to the sale.

On the 2d of November, 1855, Black & Cobb instituted suit against Johnson, to recover the balance due for the cotton, according to the terms of the contract.

From the evidence adduced on the trial of the case, it appeared that a crop lot of cotton was understood amongst cotton buyers to be an average lot of cotton, that is, the larger part of it good; that from eight to ten days was a reasonable time to deliver cotton by wagons, when the cotton was eighty-five or ninety miles distant from the place of delivery, and that two weeks was a liberal time; that the value of an average crop lot of cotton in August, 1855, was ten and a half cents per pound; that the twenty-seven bales sent to Charleston was of very inferior quality, and in a badly damaged condition, and that the twenty-six bales sent to Augusta, was likewise of very inferior quality, and in such a damaged condition as that the railroad company would not give a receipt for it without an express statement that it was in "bad order"; that the price of a good crop lot of cotton, in the city of Augusta, in November, 1855, was from eight to eight and a half cents per pound.

It was also proved that the cotton in question belonged to the fourth class of cottons, there being but one grade below it.

The plaintiffs also proved, that every exertion was made to hire teams and wagons to haul the cotton to Rome before the time that it was delivered, and that the Coosa river was so low that the steamboats could not run.

It was also shown, on the trial, that cotton declined from its highest price in June, as much as four cents per pound by the month of August.

The presiding Judge charged the jury, (amongst other things,) "that the first twenty-seven bales of cotton had nothing to do with the case, if the jury believed they had been received by the defendant, and settled for by him, and that if it was the contract to deliver the cotton by steamboat, the plaintiffs were not bound to deliver it until steamboats could run."

The jury returned a verdict in favor of the plaintiffs for $426 00, with costs of suit, and counsel for defendant moved for a new trial of the case on the following, amongst other grounds, which the Supreme Court did not consider, to-wit:

1st. Because the verdict of the jury was contrary to law, and strongly and decidedly against the weight of the evidence in the case.

2d. Because the Court erred in the charge given to the jury, as hereinbefore stated.

The new trial was refused, and that refusal is the error alleged.

UNDERWOOD & SMITH, for plaintiff in error.

F. C. SHROPSHIRE, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

1. The charge of the Court, as stated in the ground of the motion for new trial, that "if the contract was that the cotton was to be delivered by steamboat, the plaintiff was not bound to deliver the cotton until steamboats could run" was erroneous, because there was no evidence before the Court to warrant that charge.

Johnson *vs.* Black & Cobb.

2. The contract between the parties, as shown by the evidence, was, that the plaintiff in the action sold to the defendant a crop lot of cotton, being the Walker lot of fifty-three bales, at ten and a half cents, to be delivered to defendant, in Rome, within a reasonable time. The cotton at the time was sixty-five or seventy miles from Rome, and had not been seen by defendant. According to the custom of the trade in Rome, it is understood that a crop lot of cotton purchased unseen is to be an average lot, and the larger part good. The evidence discloses that the cotton was not delivered, or in a condition to be, within a reasonable time, more than a month having elapsed from the date of the trade at the time when the cotton was brought to market, when two weeks would not only have been a reasonable, but a liberal, time. The cotton was not an average lot, but was of a very inferior quality, and in a bad and damaged condition, so much so as to depreciate its sale about two cents per pound below the market price of an average lot. There is no evidence that it was a crop lot; the witness said it was the Walker lot, but he does not say it was a crop lot. In no respect, except as to the number of bales, and its being the " Walker lot," did the cotton answer to the contract of the plaintiff in respect to it. The plaintiffs therefore, were not entitled to recover from the defendant for a breach of the contract that they, on their part, had not performed; and the verdict of the jury in that was against law and the evidence, and should have been set aside by the Court below, and a new trial ordered.

Let the judgment be reversed.